Case number 18-1320, Harrison County Co-Proving Petitioner, which is a federal non-stately independent review agency, NL. Ms. Lopez for the petitioner and Mr. Scott for the respondent. Case number 18-1320. Good morning. Good morning, Your Honors. May it please the Court, I'm Margaret Lopez. Your Honors, one of the things I wanted to focus on first in this case is the fact that Mr. Scholes was not provoked into committing the insubordinate act in the derail incident, as the Secretary alleges. Mr. Scholes had a pattern of resisting the authority of his manager, Mr. McCauley. It was actually Mr. Scholes in this incident who initiated the chain of events that led to his insubordination. He was the first person to specifically say who should throw the derail. The driver of the man lift had said just get the derail and some other things to that effect, including... Before you go down this line, can I ask a question? Would the remedies that were imposed here change if you were right on the man trip incident, but wrong on the physical altercation? Do you have to went on both? Yes, Your Honor. Yes, Your Honor. We would maintain that what happened in the man lift incident in terms of insubordination supports our affirmative defense, and therefore there should be no decision in favor of the Secretary in this case if there was not... or if there was, in fact, insubordination in the man lift incident. So as I was saying, Your Honors, it was Mr. Scholes who was the first person to speak up in the man lift incident and say that Mr. McAuley, his manager, should throw the derail. Mr. McAuley was not calling out Mr. Scholes' name before that, and Mr. Scholes was actually taunting Mr. McAuley in front of his subordinates, setting up a challenge to Mr. McAuley, which was really Mr. Scholes' pattern of conduct up to this point. Mr. McAuley gave Mr. Scholes several opportunities to comply with his order that Mr. Scholes throw the derail, and each time Mr. Scholes refused that. This was clear insubordination. Was it an actual argument or a legal argument? Are you just reading the ALJ's facts or the law? This is a factual argument primarily, Your Honor. However, the law does support our position that Mr. Scholes was not provoked into this insubordination. But primarily what we're focusing on here is that there's not substantial evidence to support the judge's decision. We have to establish very clear error in the fact findings that were different from the ones you're reciting. Well, Your Honor, we would submit that the facts do not support a reasonable conclusion that there was provocation or that there was not insubordination, which is actionable here. The facts as found by the ALJ? Yes, Your Honor. The ALJ found that there was provocation. And one of the facts found by the ALJ is that Scholes would not have been the person because of his position in the man trip. He would not have been the person who would ordinarily have been ordered to perform this action. That's right, Your Honor, and that is another important fact that the judge made a mistake on in our estimation. The judge found that Mr. Scholes was not the person closest, and therefore he wasn't the one who should have thrown the D-rail. But in fact, Jason Tennant, who was the driver of the man lift, was calling out for someone to throw the D-rail. He had Mr. McCauley sitting right next to him in the jump seat, which is the position that the judge believes and the secretary believes should have been the person to throw the D-rail. Why would Mr. Tennant have called for someone to throw the D-rail, knowing that Mr. McCauley was sitting right there next to him? Mr. Scholes had already thrown a switch earlier. Mr. Ifaw, who was sitting on the opposite end of the man lift, but was closest to another switch earlier in the ride, also threw a switch. So it's clear that there was not a practice, as Mr. Scholes contends, that the man in the jump seat should be throwing the D-rail. Why would Mr. Tennant have called out for the D-rail to be thrown? There was evidence in the record, though, that said that that was the practice, right? There was testimony and evidence to that effect, but there also was testimony, including from Mr. Tennant himself, that that was not the standard practice in the ride. There's a conflict in the evidence. That's correct. There's a conflict in the evidence. That the ALJ resolved against you. Pardon me? That the ALJ resolved against you. That's correct. But we believe the substantial evidence, primarily the fact that Mr. Tennant was calling out for someone to throw the D-rail, which the judge really didn't wrestle with, supports our position that Mr. Scholes was the person who should have thrown that D-rail. There also was some discussion in the testimony about Mr. Hixenbaugh and whether he should have been the person to throw the D-rail. He was sitting opposite Mr. Scholes on that side of the man lift. There's also evidence in the record showing that Mr. Scholes, the way that his legs were intertwined with Mr. Hixenbaugh's, was actually the person closer to the switch. And I think it's important to note that Mr. Scholes had thrown a switch earlier in the incident. So, I mean, clearly Mr. Scholes, as between him and Mr. Hixenbaugh, was the person who was closest to the opening, and it was easiest for him to be the person to throw that D-rail. Can I ask you one question on another issue? And that is you have argued that the ALJ abused his discretion by the way it calculated the back pay award without having opened up the record for evidence. Did you argue anywhere before the ALJ, or even in your brief here that maybe I missed, as to what evidence you would have put in that you didn't have the authority to? Because I know you did the declaration with your post-hearing brief. Where have you made a proffer of what evidence you would put in or shown demonstrated prejudice by this process? Your Honor, the declaration is the evidence that we would put in, either through testimonial evidence, So you got it before the ALJ. We did get that before the ALJ. But we take contention with the fact that the ALJ dismissed that, saying that Mr. Fazio wasn't credible on those facts and that he was not going to take Mr. Fazio's So that's a sufficient evidence argument. You're not making a process argument. You're making a sufficient evidence argument as to the back pay award. Well, Your Honor, let me supplement that because there is a process element to this, which is that if the ALJ wanted to have testimonial evidence to this point, he did not give us an opportunity to do that. And, in fact, he said it wasn't necessary. He said that there would be a different point somewhere later in the process where if he wanted to hear further evidence on that or take further evidence on that, he would give both parties an opportunity to submit evidence as to the amount of the back pay. And then the ALJ ultimately did not give us that opportunity. In a lot of these types Well, I just want to be clear then. You said you got the evidence, the Fazio declaration was the evidence you wanted to put in. That's correct. The facts in the Fazio evidence were the facts that we would have put in. But if the judge wasn't going to be convinced of that, he should have given us an opportunity to have testimonial evidence put in as well. Of the same facts? It would have been as to the same facts, Your Honor. But Mr. Fazio could have testified as to, more particularly, why his experience of the mine qualified him to put in those facts, why Mr. Skoll's recitation of the facts are not correct. I mean, we could have addressed a lot more here if the judge had given us in your post-hearing briefing. Pardon me, Your Honor? I just hadn't seen any argument from you as to prejudice, as to the process. I'm putting aside your argument that so what the district court or, sorry, the ALJ had was sufficient to support the back pay award. That's one argument. But just as to this process thing, my understanding from you is you've got in everything you want and you never objected to the ALJ or argued in your brief here that you were prejudiced by here's something else we would have done had we been given the opportunity that we weren't given procedurally. Your Honor, I appreciate you giving me a chance to address that. No, we take offense or we take concern with the way that the ALJ did not give us an opportunity to put in additional evidence if he felt that he was going to need that. There was no indication here that an affidavit wouldn't have been sufficient. These are cut-and-dry facts. Right, the ALJ didn't seem to think he needed more. So if the ALJ thought he had enough and you put your stuff in, then it's a sufficiency argument, not a procedural argument. Your Honor, I will agree with you it's primarily a sufficiency argument, but the judge was very clear that he wasn't going to need a full hearing yet on that point. And so we put in the affidavit to counter the information that had already gotten in the record through Mr. Schultz. We could have countered that in a much more thorough way if we knew that that was going to be the only opportunity the ALJ was going to give us. And in these types of cases, they usually are bifurcated. Okay. So that's where I didn't see anything in your brief that said, here's what else we would have put on, or what else. Not that we would have said the same stuff orally rather than writing. Here's what else we didn't get a chance to put on. Well, Your Honor, he made his decision based on credibility finding against Mr. Fazio. I think testimonial evidence would have helped to counter any concern the judge had about Mr. Fazio's qualifications to say that these, in fact, were the correct ways to calculate the back pay. But didn't he testify about other matters? Did Mr. Fazio testify about other matters? He did, Your Honor. And he was found to be not credible in that testimony? He was. But, Your Honor, you know, as to back pay, Mr. Fazio was the manager of human resources at the mine. He was the person who could look at the payroll records and determine definitively what would have been the average amount of overtime for Mr. Schultz in the relevant period, how many Saturdays he would have worked. Mr. Schultz admitted in his testimony, and the judge used the same words to describe Mr. Schultz's testimony on this as a rough estimate. Mr. Schultz did not have that data at his fingertips that Mr. Fazio had. So we really do take exception of the way the judge, first of all, didn't give us an opportunity to put on testimonial evidence to this point, which we could have because Mr. Fazio was there. And then, secondly, dismissed an affidavit, a sworn affidavit, with the facts from the head of HR as to what the correct back pay calculation was. Your Honors, I also wanted to address the headbutt incident, so-called, because this is something else that the judge relied on very heavily, particularly to find that there was protected activity in this case. Mr. Schultz did not have a good faith belief that this was intentional conduct. The very fact that Mr. Schultz, just five days later in the derail incident, challenged Mr. McCauley in front of the crew by saying, Mr. McCauley should be the one to throw the derail incident, I think is good evidence of the fact that Mr. Schultz was not intimidated by what happened in the so-called headbutt incident. Mr. Schultz was not in fear of his physical safety with regard to Mr. McCauley. If he were, he never would have challenged Mr. McCauley, just, you know, those five days later, the next time they were together, as he did in the derail incident. This was a mutual disagreement that was escalated by Mr. Schultz on September the 3rd. Mr. Schultz was, again, the first person to elevate this to the point of an argument. When Mr. McCauley said that he was checking to see if Mr. Rad had actually ordered Mr. Schultz to do the shoveling on the belt, Mr. Schultz's comeback to that was, you can ask whoever you want. And then he proceeded to follow, again, his pattern of resisting work assignments from Mr. McCauley and challenge him, claiming that, you know, he felt like he was being harassed, he was being intimidated. And at one point, when Mr. McCauley tried to give Mr. Schultz a tape measure so that Mr. Schultz could measure the height of the belt under which they were going to be shoveling, Mr. Schultz said he couldn't read it because he was illiterate. So, again, Mr. Schultz is the one who is really driving the chain of events here. In the end, you've used up your time. Am I correct that Mr. Schultz has since been discharged and his discharge upheld? That's correct, Your Honor. All right. Thank you. Ms. Scott. May it please the Court. Perhaps I'll work backward from Ms. Lopez's argument. This case is simply a substantial evidence challenge to the judge's findings. And what Harrison County has asked the Court to do is simply to relitigate the facts, not to review them under the deferential standard, which simply asks whether the judge could reasonably have reached the conclusions that he did. And the answer to that question, with respect to every issue, is yes. Can you start by focusing on the calculation of back pay, how there was sufficient evidence to rely on what the ALJ said was just an estimate that more detailed or specific information would have to be in the record before he could calculate back pay and then just relied on an estimate? I will agree that maybe the judge's language on this point was imperfect. But the fundamental language I'm talking about whether there was sufficient and, by the way, the ALJ said you all agree that it was just an estimate, too, so that's not a problem with the ALJ's language. So tell me why, not language, what was the sufficient evidence on which the back pay calculation rested? The evidence was Mr. Scholes' testimony about the number of hours he typically worked, about his wages, about the amount of overtime he typically worked after Labor Day, and about, to the best of his knowledge, the days during which the mine was idled. Well, he said he didn't know. That's true, he said he didn't know, but in his brief testimony... So he didn't purport to offer a number on that, and then Mr. Fazio came in and said, here's the days it was closed. What evidence was there that Mr. Fazio was wrong? Because the district court said, or the ALJ said, I don't believe Mr. Fazio, I guess, for anything. So what evidence, what affirmative evidence was there in the evidence,  as to the number of days the mine was closed? Well, other than Mr. Scholes' evidence about what he worked, there wasn't any, but I don't think that that means... Isn't that part of the back, is that an important part of the back pay calculation? Do you get paid back pay for a day that the mine's closed? I do not believe so, no. And there was no dispute that the mine was closed some number of days during the suspension period? That's true, and Scholes, again, gave the judge the best evidence that he had of that, and I think this goes to... The best evidence that Scholes had was, I don't know. Unless I'm wrong, if you can point me to something where Scholes said, here is my actual evidence of how many days the mine was closed. Can you point me to that? I mean, Scholes told the judge to the best of his knowledge, here's what the mine was closed, and I think this goes to the point that... Where are you reading the record? I don't have this side in front of me. Did he have firsthand knowledge of when the mine was closed? These are... I don't know that he testified in detail about this. I think that, you know, and if you look at Harrison's affidavit, the affidavit that was attached, really this is, even assuming that Scholes made an error, this was an error of two days, I think, whether Scholes was entitled to 40 days or 42 days. Does he have to have substantial evidence for the... Well, no, I'm talking about within the 40-day suspension period, whether the mine was closed or not. But does he have to have substantial evidence for the dollar amount you adopt, or do we have good enough for government work? Well, I think the secretary has to prove the amount of back pay by a preponderance, and at that point the burden shifts under commission precedent to the operator to rebut that by a preponderance itself. Yeah, I'm trying to go on that first part. Did you prove by a preponderance how many days the mine was open? I think by a preponderance, yes. I mean... Where is that? Okay. I didn't see that. I saw Mr. Scholes saying, I wasn't working, remember? I think it was closed some days, but I don't know. Right. Am I wrong in that characterization? I don't think so, no. The mine was, I think the period, the actual number of days between Scholes' suspension and when he went back to work was 60. I think he said there were 20 days that he wasn't working as a result of shifts being off or idling, and according to Harrison, I believe, it was 18, I think. But, you know, the point, though, is the judge found that that was adequate, and this court and the commission reviewed that for an abuse of discretion. And I don't think the judge abused his discretion by concluding that that evidence was adequate, particularly when Harrison, who conceded to this court that it was in the best position to rebut that evidence, didn't do it. I don't believe anything this guy says, and so therefore I'm crediting someone who said I don't know. I don't think that's what the judge said. I mean, the judge's decision actually does, I mean, it does say that generally, yes, they didn't find Fazio credible, but it also says, you know, Harrison was in possession of these records and it didn't give them to me. It also never gave the judge its own estimate of what Scholes was supposed to get. Well, it's a little bit much for the ALJ to say you didn't give me the records when the ALJ didn't have the stage of the proceeding to do that that the ALJ had promised. Well, I think Harrison never actually objected to the, you know, being, quote, unquote, denied the opportunity to do that, and in the case that we cited to this court. No, no, wait, wait, wait, wait. At that hearing where that estimate came in, they actually kept their opinion. Well, we still disagree, and the ALJ was quite clear. You said it's an estimate. The Secretary said it's only an estimate. I'm only letting it as an estimate at this stage. If we need to get more evidence for back pay, we'll have another proceeding. So the Secretary didn't come back with any more evidence? No, that's correct. The Secretary rested on the estimate. Yes. Well, I might disagree to the extent that it's an estimate, but the Secretary rested on the evidence that Scholes provided. Was the ALJ wrong to say that you all had described it as an estimate as well? I suppose not. I think, though, again, the point is that. . . So do you agree it's an estimate or not? I agree that it was enough to satisfy the burden of a preponderance of the evidence, and especially on appellate review, it was not of use of discretion for the judge to conclude that that was adequate to prove the damages that Scholes was entitled to. And I think also if there were any issue of Harrison being denied the opportunity to present its evidence, the fact that it actually presented the little evidence it chose to present would have to cure any problem. I mean, like I said, the case that we cited in our brief, at least on this procedural point, Darrell Andrews' trucking, this Court explained that in an administrative proceeding like this, as long as a party has notice of the issue and has the opportunity to present evidence and. . . That's a procedural argument. I'm trying to get to sufficiency. And what the ALJ is saying is because they were objecting, were objecting to it being offered as though it's an actual calculation of actual damages. And the ALJ says, right. But they, the Secretary, have characterized it as an estimate. Mr. Cryer, you know, I'll accept it only on that basis that it's an estimate. But that's it. And right before that, should this matter go to the point of a need to determine relief, a more precise calculation is going to be needed. ALJ, again, an estimate can be. . . This is JA 237, 238. It can only be that, just an estimate. All right. We're going to need a more precise one. Both parties will be involved. In crafting relief. I think then both parties were involved in the post-hearing briefs. In the post-hearing briefs, the Secretary explained, here's the evidence that Scholes provided. We're standing by this. And Harrison provided its evidence. It provided the affidavit. So the Secretary decided by. . . At what point did the Secretary tell the ALJ that if we no longer consider this an estimate, we consider it actually our prima facie case? I don't know exactly what date that occurred. But, you know, again, I think the question is whether the judge abused his discretion on this point. And to the extent. . . My question is sufficiency of evidence. I'm not making the procedural concern. I'm asking whether there's sufficient evidence to have calculated it under this process and under these showings when everyone agreed the mine was closed a certain number of days and there's no evidence, no substantial evidence other than something that was described as an estimate. Well, I think that's good enough to meet the substantial evidence test at the very least. Okay, but the estimate said Mr. Scholes doesn't know how many days it's open. It was closed. That's true. Okay, so what is the substantial evidence? Mr. Scholes saying, best guess, but I don't know. Is that substantial evidence? I do think that's enough to sustain the judge's decision in this case, yes. And, again, not because it was standing alone, but because Harrison didn't identify specific evidence or clear evidence that would have required the judge to ignore what Scholes gave him. If Harrison has told the court, again, that it was in the best position to provide this evidence, but it repeatedly hasn't done so, it still hasn't told anybody. It provided it in the ALJ, so I don't believe anything that guy says. That's within the ALJ's purview. To the extent that that was error, you know, I think the only remedy that would be required would be to remand for perhaps a more precise calculation, but I don't think that's necessary here. Again, because that evidence was enough. Harrison had the chance to rebut it. It didn't. The judge is in the position to make this call, and the judge made the call. And at least in the context of back pay, that's reviewed for abuse of discretion. I don't think the judge was wholly without evidence to make the decision. I'm sorry. Is back pay not reviewed for substantial evidence? Our brief explains that generally back pay is reviewed for abuse of discretion. So you don't have to have substantial evidence to support the calculations? We do. And, you know, maybe we just disagree about whether that's substantial evidence, but especially when it's unrebutted. No, I'm just trying to pin you down. Your position is that when it comes to calculating back pay, substantial evidence isn't needed? No, my position is that before the judge, the secretary has to prove by preponderance that a particular amount of damages was appropriate. The burden then shifts to the operator to rebut that by preponderance, and once the ALJ makes a finding, the question on review is whether the ALJ abused his discretion by assessing that penalty based on that evidence. Is it abuse of discretion to enter an award that's not based on substantial evidence? I think the standard for abuse of discretion is based on no evidence rather than substantial evidence. But I think if the record were wholly lacking in evidence and the judge made a figure up, if Scholes had said, for example, well, I generally make $16 an hour and I usually work four days a week and I don't have any idea how many days the mine was closed, maybe that would be a closer case. But Scholes was clear in this case. He said, I work this number of shifts a week. Because this is September and October, I'm typically working more hours or two hours per shift overtime or maybe it was per week, I apologize, I can't recall. But he was very clear in the evidence that he gave the judge. It was not pure speculation. I see I'm over my time. If I might just take one moment to address the question of protective activity. Most of what Harrison has said to attempt to argue that Scholes did not engage in protective activity simply misses the point. The question is whether a miner who has experienced what either was an assault or what he and at least two other miners reasonably perceived to be an assault underground and reported it engaged in making a complaint that is related to the Mine Act. And it is the Secretary's position that unequivocally, yes, that is a complaint related to the Mine Act. I apologize. I have one more quick question. On the part of the order that says they have to undergo comprehensive specialized training by mission personnel and they object that they don't understand what it is they're supposed to do, and your sole response in the brief was what we tell you to do? Or just ask MSHA and they'll tell you what you need to do? Is that sufficient? Is this standard language? Is that sufficient? It's not standard language. It's not unprecedented. But I think, you know, the mining community is small. This mine works with MSHA very closely. And shortly after our brief was filed and certainly before the final briefs were filed in this case, the mine had worked with MSHA. The training has been completed. Is that issue now moved then? I do think it probably is moved at this point. All right. Does Ms. Lopez have any time? Ms. Lopez does not have any time. Okay. I thought you had a minute. Why don't you take a minute? Can I ask you quickly whether you agree that the challenge to the specialized training is now moved? Your Honor, we have not received any confirmation from the Secretary that the training has been fully completed. But based on what the Secretary has represented here today, I think we're satisfied. Okay. We had asked for that in writing and hadn't gotten it previously. Your Honors, I just want to mention one other thing on the back pay. To come back to your question, Judge Millett, about procedural issues with it, we were not given an opportunity to cross-examine Mr. Scholes on the back pay issue. The judge let the parties know about he would give us another opportunity later, both sides, to craft a relief. All of that discussion was coming in during direct when we objected to. So you tried to ask cross-examination questions and were shut down? Is that in the record? No, Your Honor, but there was no cross to Mr. Scholes as to his knowledge, how, for example, he knew when the mine was closed and wasn't closed, and that's because, again, the judge indicated this is not the time to have evidence about the back pay. So we were deprived of that opportunity to pursue that as a procedural matter. Did you try to cross-examine him on that? No, Your Honor, because the judge had already told us this hearing is not the place to have evidence about the amount of the back pay. As to your question about abuse of discretion, we would submit that it was abuse or that the question of abuse of discretion comes in as to whether a make-whole remedy of back pay is appropriate in the case. But as to the actual calculation of back pay, that is a substantial evidence review standard for the court. All right. Thank you.
judges: Henderson, Millett, Wilkins